Good morning. Thank you, Your Honor. May it please the Court. My name is Tim Sullivan, and I represent the appellant in this case, TGS Transportation, Inc. This case presents two major issues, one of which- I think we understand the issues, Counsel. Why don't you tell us the three or four things that Canal did or didn't do that you think warrant a trial on bad faith? On bad faith in regard to the advice of counsel defense or in regard to the genuine issue? Your three or four best shots on their behavior or lack of action or whatever that would justify going to a jury on bad faith. They paid the contract damages. After the summary adjudication ruling, yes, Your Honor, they did pay the contract damages. I think the primary thing would have to be failure to even consider California law and California rules of contract interpretation. Here we have a case of a California insured with a California claim, handled by a South Carolina insurance company, who hires a New York coverage counsel who renders an opinion based upon Louisiana law, from which she contrives an argument for denial of coverage in the case. Nowhere did the coverage counsel from New York consider California law or California rules of interpretation, especially the rule that requires coverage clauses to be interpreted broadly and exclusions to be interpreted narrowly. Canal also had an obligation under the Paulson case to know California law and apply it. But when we deposed coverage counsel, she said she didn't know, when she wrote the opinion, if she knew whether California law had those requirements, requiring her to construe coverage clauses broadly. And ironically, it's that same law, those same rules of contract interpretation, that this Court relied upon in 2004, the first time we were here on the first appeal. Well, there's some difference between breaking a contract and behaving so outrageously that you're in bad faith. I've thought of a hypothetical I'd like to give you as a – this is apart from the issue of whether you won on the contract. But it involves the theft. If a – if someone breaks into my house and takes my wallet out of my bedroom and moves down to the living room, has that person committed the theft? If they take the wallet and move it under California law, even the slightest amount, the element of aspertation is present. Well, you state the law very well. Now, it seems to me that that is what happened to the trailer. It was stolen. And I think it's a perfectly reasonable point of view to think a thief cannot create coverage. They were wrong on it, according to our opinion. But what's unreasonable about believing that the thief cannot create coverage? Most people think that. Well, Your Honor, this Court didn't think so in 2004. No, of course it didn't. But, you know, Judge Coyle didn't agree with you on the issue. But it's not what a court thinks, but what was reasonable. Right. And this Court in 2004, in its opinion, said it was objectively reasonable for TGS to expect coverage under this policy language. And in 2004, in its opinion, this Court said the policy language was, at best, ambiguous. And this Court said the district court impermissibly construed the coverage clause narrowly, violating the very rules of contract interpretation that we said Canals should have thought of, should have considered, and failed to consider. Is it possible for an insurance company in a situation like this to be in error but not in bad faith? Certainly, Your Honor. It is. And what defines the distance between those two? Well, really, it's a factual issue in most cases. The law that has developed under cases like Chateau-Chamberay and Handgardner and other cases applying the genuine dispute doctrine said that it can become an issue of law under certain circumstances where the facts are undisputed and only one reasonable inference can be drawn from those facts. But those same cases say, on the other hand, an insurer is not entitled to summary judgment as a matter of law where, viewing the facts and the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably. We're not appealing here from a final judgment and a jury verdict or a determination by the court. We're appealing from a ruling on a summary adjudication motion. And the issue here is not, is there conclusive evidence that Canal acted in bad faith or convincing evidence that Canal acted in bad faith. The issue is, are there any disputed facts from which a reasonable jury could draw the conclusion that Canal acted in bad faith? And there are a lot of disputed facts here that would support that conclusion. The first was failure to apply California law. The second is willfully concealing information from their coverage counsel. Canal had a set of photographs from the original investigator, Mr. Brunel. These photographs depicted gouges on the glass on the wing window of the truck. They depicted other gouges in the rubber trim around the window of that truck. And Mr. Brunel wrote on the caption, this is where most break-ins in older tractors of this type occur. They also had evidence that the trailer itself was sealed by a pin bolt with a serial number that was put on there by the shipper that owned the cargo. And evidence that the only way for that to be removed so that the trailer could be opened was by cutting it off with bolt cutters or a hacksaw. That information was in Mr. Brunel's report. It was in the statement of John Taylor. It was in the statement of Peter Schneider of TGS. All of that information disappeared. None of it was given to coverage counsel. Instead, Mr. Brunel's boss, Mr. Galloway, wrote a document which he called the first report, which, of course, wasn't the first report. It was the second after Mr. Brunel's. But Mr. Galloway wrote a document called First Report, and that was the only document sent to coverage counsel in New York. Did you depose coverage counsel? We did, Your Honor. And did you ask them whether if they'd had all of this information you alleged was missing or withheld, that their opinion would have been different? Well, the interesting thing about Can you start with a yes or no? We did ask, Your Honor, and they said no. And what was their response? They said no, because they didn't give an opinion on the issues about breaking and entering into the truck. The advice in this case was limited to one issue and one issue only. Was there physical attachment between the tractor and the trailer? However, Canal denied coverage on three grounds. One, physical detachment. Two, lack of evidence of forcible entry. And three, the trailer wasn't a scheduled vehicle on the policy. Now, in this case, Mr. McCarty, who was designated as the person most knowledgeable of Canal and the sole claims handler responsible for handling the claim and who made the ultimate decision to deny coverage, testified that Canal never schedules trailers on cargo policies. So one of the grounds for denying coverage in this case contravened Canal's established pattern and practice of not scheduling trailers on the policy. If they had denied simply on the basis of attachment and hired a liability defense firm in California that regularly did liability work for this carrier, would they have been in good faith? Your Honor, I don't believe so, because you're changing the facts, of course. But then we'd still have the question of was there an adequate investigation of the claim. They didn't follow up on the information from the ---- Are you saying it would have been bad faith to simply say the policy requires attachment, there was no attachment, end of story, claim denied? Well, that, of course, I'm having trouble with that hypothetical, Your Honor, because that is not what they said. That's why I ask them. In this case, of course, Canal said it wasn't ---- it couldn't be attached by a thief and it had to be attached before the theft. So hypothetically, had they said there was no attachment, I would say, yes, there would be bad faith here. Because as this Court decided in 2004, Canal was interpreting the policy in an impermissibly narrow fashion. So is it your position that if they had done anything other than simply pay the claim, they would have been in bad faith? Well, Your Honor, if they had done an adequate ---- Would that be a yes or no to that? If they had done anything other than pay the claim. Is it your position ---- No, Your Honor. ---- that if Canal had done anything other than simply pay the claim? If they had paid the claim, of course, that would have been in good faith. But they also could have done a thorough investigation, which they didn't do. Well, let's assume they did a thorough investigation, a pristine investigation, the investigation you would have designed for them, and they would have disclosed all of this to Coverage Counsel and they still denied coverage. Bad faith or not? Well, I would say yes, Your Honor, because coverage ---- So isn't the answer to Judge Hawkins' hypothetical that really you're just saying there's no way, unless they paid the claim, that they could have, under your theory, that they could have been in good faith? Well, Your Honor, with all due respect, your hypothetical leaves out the fact that Canal got advice from counsel on one issue, denied coverage on three issues, and then sued my client. You're not required to get advice of counsel on every issue. No, you're not. That's not bad faith to limit your inquiry if you're going to deny on other bases. Your Honor, I believe that there are circumstances where it would be bad faith if you failed to get advice of counsel. Here you have an issue that is an issue of first impression. They couldn't find any case law on point. I think they had an obligation under those circumstances to hire Coverage Counsel. And your best case on that is what? I think the case is ---- I can't think of one directly on point that deals with that, Your Honor. Well, you're a little over your time. We'll give you a minute for rebuttal. Very well. Maybe you can come up with something. Thank you, Your Honor. Thanks for your argument, counsel. We'll hear from the carrier at this time. Thank you. Jim Wilkins appearing on behalf of the Appellee Canal Insurance Company. Just kind of cutting to the chase of some of the issues that were raised, the notion that no consideration was given to California law by Coverage Counsel is not accurate. Coverage Counsel that was retained in this case is nationally recognized by Canal as expert Coverage Counsel on cargo, and they testified that they were aware of the contract interpretation laws in California. You can find that in the excerpts of record. You know, there's Coverage Counsel and then there's Coverage Counsel. I have a good friend who's made a very healthy living advising companies based with environmental lawsuits on how to rope in their carriers, and that's all he does. He limits his practice, his firm's practice, to representing insureds. He never represents a carrier. But I suppose he's a Coverage Counsel. So are we entitled to look at the nature of the counsel? That's one outside advice you sought? You know, I really think if there's evidence, and there was a case where an IME case that was one of the disability cases that's been cited in the briefs, either Hamgardner, I think it's Hamgardner, and in that case they retained an expert on IME, and there's IMEs and there's IMEs. But in that case, there was evidence that that IME, 13 for 13 cases, always said there's no disability. And in that case, there was evidence of a practice by the company of designing a claims practice, retaining that IME and others like him to achieve a result of always denying coverage. Your argument is that's not the case on this record? Absolutely. If they don't have some evidence of a biased retention, then whether it's New York counsel or whether it's Tulare County counsel, they're entitled to rely on advice that they have. And counsel comes up here and says there's no California law on the topic. This case came to canal with Lon McCarty, the claims examiner, saying, in my view, I don't think there's coverage. If he had done nothing else but deny coverage there, they would have claimed bad faith because he says, gee, if there's no law, you have to get legal advice. Here they got legal advice, and that legal advice was there's no other law on the topic in California. Let me see if there's law anywhere else. And they found three cases out of State, and they said based on these cases and based on our experience, you have ample information from which to deny coverage. Judge Noonan asked whether a thief can create coverage. Can a thief deny coverage? Can a thief do things to deny coverage? I think so. I think so. In this case, the way the policy language was read, this Court said that regardless of what happened with this particular thief in this particular case, there is no coverage. But I can imagine there are situations where a thief would do something that could avoid coverage. But under the facts of this case, this Court has said the language, the ensuring agreement, says it made no difference. So but the advice that canal got was, yes, that's the answer. That thief couldn't change the result here. You have sufficient information from which to deny coverage. If it's not that the coverage counsel didn't stop there. The coverage counsel said you may want to file a deck action. They did. Well, they said you could. You could also do that. But there's no requirement. Isn't that the safe course? I'm sorry? Isn't that the safest course? I'm sorry. Isn't that the safest course to file a deck action? It could be the safest course, but it's not the required course. So there's no reason to deny coverage. Because under that scenario, if you have coverage counsel telling you we believe you can deny coverage or if you want you can file deck relief, well then, and the law was, well, even if you get coverage counsel to tell you in their opinion you can deny, and the law is, well, you can't. You've got to file deck relief. Then there will never be a denial. You'll always file deck relief. And that's not the law. There's no case law that suggests that. Somewhat different from that. I mean, obviously there are no grounds at all. But the opinion here was saying, well, this isn't, we aren't sure. We're not 100%. We've got some jurisdictions which go our way. We think you can decline it, but you might want to file a deck action. I mean, that's your coverage counsel telling you that. It's not the law telling you you have to file a deck action. But under those circumstances, there's enough risk that if you file a deck, if you just deny it, then you expose yourself to bad faith. The whole principle of the advice of counsel and the whole principle of the genuine issue doctrine is insurance companies are going to be faced in situations where there is no definitive answer on the topic. And they're going to have to make a decision where there is no definitive answer. And the law says if you're faced with that scenario and you act reasonably, even if you're wrong, it's okay. It's not bad faith. Bad faith requires something more than negligence. So here you could say, yes, they knew there was a chance that they would be wrong. That was the case from the moment there was no California case directly on point. But if they reasonably believe that this was the right decision to do, then the law says, okay, you may be liable for breach of contract, but you're not liable for bad faith. Bad faith requires something more than that. And the evidence here, this idea that there wasn't investigation and stuff, all of that had to do with another issue, the forced entry issue. And this case, the denial was based on the attachment issue. And on the attachment issue, Coverage Counsel had all the information they needed from which to reach a conclusion on that. It was undisputed that at the time of the tractor's taking, it was not attached to the vehicle. The thief stole the tractor, attached it to an unscheduled trailer. That was undisputed. And based on that undisputed evidence, Coverage Counsel rendered an opinion. There's a ñ was Gardner in-house counsel? Yes. Or no. It's the National Coverage Counsel. It's Coverage Counsel that was retained. She wrote a letter in June, June 29 of 2000. Yes. And in it says there was no forcible entry in the ignition. What was the factual basis for that statement? The report that she received from the independent adjuster had said, and there wasn't any evidence of forced entry into the ignition. Just from looking into the window, they said they could not see any forced entry. He could look through the window and tell whether the ignition's been jimmied? That was the report that was received. But, again, that wasn't the basis of the denial. I mean, you have to cite ñ Sure it was. I'm sorry. Is the letter denying coverage listed? It does list it because under the law, if there are any reasons that you're going to rely on that you might rely on, you have to set it forth. Because failing to do so, then you'll be argued that you haven't identified everything. Exactly. But how can you say now you didn't rely on that at all? I'm not saying we didn't rely on that at all. What I'm saying is you reserve the right to rely on that in the events one of your other coverage defenses don't work. But that's not the way the letter was put. I understand that you want to communicate in a reservation of rights letter or a denial letter the basis upon which you're denying coverage or at least reserving your rights. But there's no indication here that you're saying, well, this is just our alternative. It's another reason. It is another reason. What I'm saying, for purposes of evaluating bad faith, you look at, in this case, the decision that was rendered to deny coverage is based on the notion that coverage counsel is saying, I think on the attachment issue you have ample evidence from which to deny coverage. And they do deny coverage on that. And all the information they needed to make that conclusion was undisputed and was provided to counsel. There was no dispute about that. All they needed to know to render that opinion was that the tractor was not attached to the trailer at the time the thief stole the tractor. This Court disagreed that that was a correct analysis, but that's the facts that they had. And all these other facts about the forced entry are facts about issues that are insignificant to that issue. That issue, the facts were undisputed and were known. I was making reference to the record earlier, and I forgot to give the page numbers, 676 and 677 of the deposition from Ms. Norman where she said she was aware of California law. Well, she writes to counsel saying it's the intention of Canal Insurance Company to proceed with a deck action. They did file a deck action. I mean, she's telling them at that point that they're going to, that a deck action is appropriate, right? Well, are you talking about the June letter? Yeah. And the June letter denied coverage and filed a deck relief action. They did both. They did both. They weren't saying we're going to file deck relief and not deny. They were denying. And they were saying there was a controversy because TGS was continuing to claim that there was coverage, and so they filed deck relief. Deck relief was filed. On behalf of TGS, though, right? Actually, Canal filed a declaratory relief action. Canal filed a declaratory relief action in Utah because in the application, the application indicated that TGS's principal place of business was Utah. And then it got removed and changed the venue to here. One other comment. Counsel on the summary judgment motion had said that, you know, the issue of genuine issue or advice of counsel, those are factual issues that have to be determined factually. The law says that objectively reasonable determination of genuine issue is a legal issue. And the most recent case on that is the Cal Farm v. T-A-D-E-U-S-Z. And that's at 131 Calat Forth 273 at 286-287. When you're done with your argument, is this in your brief? No. It's just a new case. When you're done with your argument, she has a little slip that a courtroom deputy should fill it out and give your opposing counsel. Okay. You're about 20 seconds over time. I see that, Your Honor. Thank you for your argument. I appreciate you coming in today. Thank you.  We'll give you a minute. Judge Thomas asked if Canal relied upon these grounds, including the lack of forcible entry. They certainly relied upon it. In the Utah Declaratory Relief Action, they sued my client for three grounds, including lack of forcible entry. They sued him on two grounds for which they did not seek advice of counsel.  I'm confused a little bit. What happened to the Utah case? It was dismissed because we had already filed the breach of contract and bad faith claim here in California. I see. And I believe Canal made a motion to dismiss and it was granted. I'm sorry. TGS made a motion to dismiss and it was granted. In regard to Ms. Gardner's knowledge, page 95 of her deposition, she was asked, at the time of the May 18th opinion letter, was it your understanding that California law requires an insurer to interpret the insuring provisions of a liability policy broadly in favor of coverage? And her answer, I don't know. I don't know that I have been, in writing the May 18th letter, I'll forget it. She testified she was not aware of those requirements, which are the same requirements this Court applied in 2004 to find that Canal was reading a limitation in the policy that it did not contain and was impermissibly construing the coverage narrowly. Thank you. Does that amount to more than negligence on her part? Well, Your Honor, violating California rules of contract interpretation and insurance policy interpretation I think would certainly be well beyond negligence. They have a duty on it. It sounds like negligence on the lawyer's part. Well, under Paulison, the Court has said the carrier has a duty to know and apply California rules of insurance policy interpretation. If there is no case on point, where do you go to? You go to rules of interpretation, which is what this Court did in 2004 to find the interpretation was impermissibly narrow, the language was ambiguous at best, and it was not a limitation in the policy that the policy did not contain. So Judge Coyle was acting in bad faith when he found it contrary? I won't cast dispersions on Judge Coyle, Your Honor, but he accepted the arguments and interpretation advanced by Canal, and we believe he was erroneous in this ruling just as he was erroneous before the Court reversed him in 2004. Okay. Thank you. Thank you for your argument. Just a quick question. Did the two of you both work regularly in this area in insurance coverage? Do you? You may want to watch the next argument. We will. All right. Okay. The case just argued will be submitted for decision, and we'll proceed to Storer v. Paul Revere Life.
judges: Noonan, Hawkins, Thomas